IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CT-3204-BO

| | | |
|---|---|---|
| GREG H. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| CHARLES COOPER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motions for summary judgment [D.E. 56], to file all exhibits under seal [D.E. 60], and to manually file a video exhibit [D.E. 61]. As explained below, the court grants defendants' motion for summary judgment, denies in part defendants' motion to file all exhibits under seal, and grants defendants' motion to manually file a video exhibit.

**STATEMENT OF THE CASE**

On July 17, 2023, Greg H. Johnson ("Johnson" or "plaintiff"), a state inmate proceeding pro se, filed a complaint under 42 U.S.C. § 1983 [D.E. 1]. On December 20, 2023, the court reviewed the complaint and allowed Johnson to proceed with his Eighth Amendment excessive-force claims against defendants Charles Cooper ("Cooper"), Alfreda Threat ("Threat"), Zachary A. Cannon ("Cannon"), Robert Anthony Smith ("Smith"), Joseph M. Carter ("Carter"), Kaneda Gethers ("Gethers"), Lisa Webster ("Webster"), Juanita Alston ("Alston"), and Kenneth J. White ("White") [D.E. 10].

On January 10, 2025, defendants moved for summary judgment [D.E. 56] and filed a memorandum in support [D.E. 57], a statement of material facts [D.E. 58], and an appendix [D.E.

59]. Defendants also moved to file all exhibits under seal [D.E. 60] and to manually file a video exhibit [D.E. 61][1]. On January 15, 2025, defendants filed amended declarations [D.E. 65–66]. The court notified Johnson about the motion for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 62]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). On February 21, 2025, the mailing was returned to the court as undeliverable [D.E. 68]. On February 27, 2025, the court directed defendants to serve Johnson with another copy of the motion for summary judgment at his address in Selma, North Carolina [D.E. 69].[2] On the same date, defendants filed a certificate of service stating that they served Johnson with another copy of the motion for summary judgment at his address in Selma, North Carolina [D.E. 70]. On March 31, 2025, Johnson notified the court that he was currently at the Wake County Detention Center [D.E. 71]. On April 10, 2025, the court directed defendants to serve Johnson with another copy of the motion for summary judgment at the Wake County Detention Center and directed the clerk to resend Johnson the court's Roseboro notice [D.E. 72]. On April 15, 2025, defendants filed a certificate of service stating that they served Johnson with another copy of the motion for summary judgment at the Wake County Detention Center [D.E. 73–74]. On April 24, 2025, Johnson filed a one-page response in opposition [D.E. 75]. On April 30, 2025, defendants replied [D.E. 76].[3]

---

[1] The court grants defendants' motion to manually file a video exhibit [D.E. 61].

[2] North Carolina Prisoner Legal Services, Inc. ("NCPLS") notified the court of Johnson's updated address in another action in this court. See Johnson v. Meadows, No. 5:19-CT-3131-BO, [D.E. 162] (E.D.N.C. Jan. 30, 2025).

[3] In his one-page response to defendants' motion for summary judgment Johnson stated that he had not yet received defendants' motion, but he wanted to "answer[] these matters" anyways. See [D.E. 75] 1. On April 24, 2025, the Wake County Detention Center received defendants' mailing. See [D.E. 76-1] 3. On April 25, 2025, a sergeant attempted to escort Johnson to the law library so that he could view defendants' video exhibit, but Johnson refused. See id. at 2. On the same date, Johnson signed a witness statement stating that he "was in fact given a chance

2

## STATEMENT OF THE FACTS

The allegations of Johnson's complaint arose at Granville Correctional Institution ("Granville"). See Defts.' Statement of Material Facts ("DSMF") [D.E. 58] ¶ 8.[4] On February 24, 2023, at approximately noon, defendant Alston opened Johnson's food passage door to deliver his lunch. See id. at ¶ 9. Once Johnson's food passage door was opened, Johnson extended his arm out of the door and squirted feces onto Alston's face, eyes, and shirt. See id. at ¶ 10. Alston then administered pepper spray and used the food tray in her hand to stop Johnson from squirting feces onto her. See id. at ¶ 11.

After Alston used pepper spray, officers attempted to escort Johnson to decontamination and be medically evaluated. See id. at ¶ 12. Lieutenant Steven Averette ("Averette") went to Johnson's cell and ordered him to submit to handcuffs. See id. at ¶ 13. When Johnson refused, an anticipated use of force ("AUOF") team consisting of defendants Cooper, Carter, Cannon, and Smith assembled to escort Johnson to decontamination and be medically evaluated. See id. at ¶ 14. Defendant Threat was the handheld camera operator. See id. at ¶ 15. Defendant White ordered Johnson to submit to restraints, but Johnson again refused. See id. at ¶ 16. The shield operator

---

to view the copy of the video footage however declined because [he had] already s[een] all the unconstitutional acts done to [him], and [he had] also filed [his] answering of the defendants' motion for summary judgment." Id. at 1.

[4] A party's statement of undisputed material facts is "deemed admitted for purposes of the motion [for summary judgment] unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." Local Civ. R. 56.1(a)(2); Felton v. Moneysworth Linen Serv., Inc., 295 F. Supp. 3d 595, 597 n.1 (E.D.N.C. 2018); Howard v. Coll. of the Albemarle, 262 F. Supp. 3d 322, 329 n.1 (E.D.N.C. 2017), aff'd, 697 F. App'x 257 (4th Cir. 2017) (per curiam) (unpublished); United States v. Compassionate Home Care Servs., Inc., No. 7:14-CV-113-D, 2017 WL 1030706, at *1 n.1 (E.D.N.C. May 15, 2017) (unpublished); see Fed. R. Civ. P. 56(e)(2). Johnson did not controvert defendants' statement of material facts or offer affidavits, declarations, or other competent summary judgment evidence in opposition to defendants' motion for summary judgment, and his complaint is not verified. See Compl. [D.E. 1] 1--12; [D.E. 75] 1; [D.E. 76-1] 1–3; see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021).

then demonstrated the shield for a two second count, but Johnson still refused to submit to restraints. See id. at ¶ 17.

After Johnson refused to comply with orders to be restrained, White ordered the AUOF team to open Johnson's door and enter his cell. See id. at ¶ 18. Once defendants entered the cell, Johnson grabbed the shield with both hands. See id. at ¶ 20. Defendants moved into the cell to stop Johnson from obtaining the shield as a weapon and to restrain him. See id. at ¶ 21. Once inside the cell, defendants ordered Johnson to stop resisting and to put his hands behind his back. See id. at ¶ 22. Defendants placed Johnson on the floor to place restraints on him. See id. Johnson resisted and it took defendants approximately two minutes to place Johnson's hands and feet in restraints. See id. at ¶ 23. During this time, the electronic shield was activated on multiple occasions. See id. at ¶ 24. Eventually, defendants restrained Johnson and escorted him to medical for screening and decontamination. See id. at ¶ 25. Defendants Webster and Gethers were not present for the first use of force incident where defendant Alston administered pepper spray, or the second use of force incident where the AUOF team entered Johnson's cell and placed restraints on him. See id. at ¶ 26.

At approximately 1:30p.m., Johnson was medically evaluated by a nurse. See id. at ¶ 27. Johnson's only complaint was that his shoulders and hands hurt from being restrained behind his back. See id. at ¶ 28. Johnson stated he felt better when his cuffs were loosened. See id. at ¶ 29. Johnson reported no injuries, and the nurse found no visible wounds on Johnson. See id. at ¶ 30.

Johnson was charged and convicted of one disciplinary infraction for assault by throwing liquid concerning the February 24, 2023, incident with defendant Alston. See id. at ¶ 32.

The Administrative Remedy Procedure is part of inmate orientation and is explained orally to each inmate. See id. at ¶ 33. From February 1, 2022, to February 1, 2024, Johnson exhausted

4

eleven grievances through step three. See id. at ¶ 34. Of the eleven grievances, two of them were submitted prior to February 2023. See id. at ¶ 35. The other grievances were filed after the alleged incident on February 24, 2023. See id. at ¶ 36.

## DISCUSSION

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (cleaned up); see Anderson, 477 U.S. at 248–49. A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 248–49. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Scott, 550 U.S. at 378.

Defendants argue Johnson failed to exhaust his administrative remedies. See [D.E. 57] 9–13. "No action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Ross v. Blake, 578 U.S. 632, 638 (2016); Woodford v. Ngo, 548 U.S. 81, 83–85 (2006); Porter v. Nussle, 534 U.S. 516, 524 (2002). "[T]he PLRA's

5

exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532. The PLRA requires a prisoner to exhaust administrative remedies "regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007); see Ross, 578 U.S. at 638–39. Failure to exhaust administrative remedies is an affirmative defense that a defendant must generally plead and prove. See Jones, 549 U.S. at 216; Wilcox v. Brown, 877 F.3d 161, 167 (4th Cir. 2017); Custis v. Davis, 851 F.3d 358, 361–63 (4th Cir. 2017).

Section 1997e(a) requires an inmate to exhaust his administrative remedies before filing suit. See Ford v. Johnson, 362 F.3d 395, 398 (7th Cir. 2004); Johnson v. Jones, 340 F.3d 624, 626–28 (8th Cir. 2003). When an inmate files suit early, courts typically dismiss the action without prejudice. See, e.g., Ford, 362 F.3d at 401; Cox v. McCargo, No. 5:16-CT-3066, 2017 WL 4581795, at *2–3 (E.D.N.C. Oct. 13, 2017) (unpublished); Griffin v. Shandles, No. 5:15-CT-3145, 2016 WL 715753, at *1–2 (E.D.N.C. Feb. 22, 2016) (unpublished); Johnson v. Cannon, No. 4:08-776-PMD, 2010 WL 936706, at *8 (D.S.C. Mar. 15, 2010) (unpublished); Shouse v. Madsen, No. 7:09-CV-461, 2010 WL 276543, at *2 (W.D. Va. Jan. 19, 2010) (unpublished). A dismissal without prejudice allows the prisoner an opportunity to exhaust the administrative process and then file a new suit, if the prisoner so chooses.

Grievances must be sufficient in detail to "alert[] the prison to the nature of the wrong for which redress is sought." Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002); see Wilcox, 877 F.3d at 167 n.4; Moore v. Bennette, 517 F.3d 717, 726 (4th Cir. 2008). A grievance, however, "need not include legal terminology or legal theories unless they are in some way needed to provide

6

notice of the harm being grieved." Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (collecting cases). "A grievance also need not contain every fact necessary to prove each element of an eventual legal claim." Id. "The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." Id.

The North Carolina Department of Adult Correction provides a three-step administrative-remedy procedure for prisoner grievances. See Moore, 517 F.3d at 721–22; see also Defts.' Ex. J [D.E. 59-1] 69–79. Between February 1, 2022, and February 1, 2024, Joyner exhausted eleven grievances. See Grande Decl. [D.E. 59-9] ¶¶ 9–10; Grande Decl. Exs. A–K [D.E. 59-9] 4–59. Eight of the eleven grievances complained about missing personal property, being on control status, medical treatment for diet, incoming mail, being deprived of food, personal property, diet and missing medications, and pain and medical mistreatment. See Grande Decl. Exs. A–B, D–E, G-J [D.E. 59-9] 4–18, 24–31, 36–55. These eight grievances did not address Johnson's claim that defendants used excessive force against him on February 24, 2023. Thus, the court turns to the remaining three grievances.

On April 20, 2023, Johnson filed grievance number 3980-2023-HCCL-22213 where he passively mentioned a use of force incident that occurred on February 24, 2023, along with other allegations about being wrongfully housed at Granville, not receiving mental health treatment, not receiving his legal mail, not receiving proper portions of food, tampering with his food, and others. See Grande Decl. Ex. C [D.E. 59-9] 20–21. On May 16, 2023, Johnson received a step one response which stated, "The offender submitted multiple complaints in the grievance; offender will need to resubmit grievance to address individual issues." Id. at 22. Johnson appealed, and on June 21, 2023, Johnson received a step two response which stated, "Your grievance addresses multiple issues in which you are to submit individual grievances so that your issues can be

7

appropriately addressed. Please resubmit your grievance. No further action is necessary in regards to this grievance." Id. at 23. Johnson appealed, and on July 10, 2023, Johnson received a step three response which stated, "[I]t appears that the rejection is/was appropriate. There are multiple issues listed in the grievance ranging from custody staff conduct to conditions of confinement, and medical care. If this offender wishes to narrow the scope of his grievance to a single issue that can be addressed through the grievance process, he/you may refile it." Id. at 19.

On August 2, 2023, Johnson filed grievance number 3980-2023-HCCL-22299 where he passively mentioned a use of force incident that occurred on February 24, 2023, along with other allegations about being wrongfully housed at Granville, staff trying to poison him, staff tampering with his mail and personal property, needing to see a doctor for labs/ blood work, and others. See Grande Decl. Ex. F [D.E. 59-9] 33. On August 12, 2023, Johnson received a step one response which stated, "[Y]ou are attempting to grieve multiple times issues, the grievance response should only address one issue, re-submitting the grievance identifying one issue is required." Id. at 34. Johnson appealed, and on August 28, 2023, Johnson received a step two response which stated, "The offender is attempting to grieve multiple times issues, the grievance response should only address one issue, The offender advised to re-submitting the grievance identifying one issue is required. So the offenders allegation can be addressed." Id. at 35. Johnson appealed, and on September 13, 2023, Johnson received a step three response which stated:

> According to the facility Offender Johnson, if you are attempting to grieve multiple times issues, the grievance response should only address one issue, and re-submitting the grievance identifying one issue is required. Offender Johnson the grievance you are referencing in this grievance, you agreed to 3980-23-18167: #In response to your Grievance, you were promoted to RHCP on 05/25/2022 and currently pending transfer, Offenders assigned to HCON housing unit may request their legal box for any legal case that is active.# Furthermore, offender Johnson, you are assigned the H-con and your review is in November of 2023. Speak with your case manager regarding transfer to another facility if you need medical treatment file out a sick call.

8

Id. at 32.

On December 18, 2023, Johnson filed grievance number 3980-2023-HCCL-23597 where he stated the following:

> I'm writing this grievance about me wrongfully being housed at Granville CI on HCON and I'm not a HCON offender, I'm on ICON and has been RHCP since 12/12/2023, and I've should've been gone since 5/25/2022 according to grievance 3980-HCDU-2022-18167 which stated I was pending transfer, however that was 21 months ago, and since then I've suffered a wrongful cruel use of force on 2/24/2023, and health issues from food being tampered with by some of the same staff who shouldn't even be around me do to a conflict of interest let alone handling my food, and mail, which have resorted in throat and stomach pains of knot in my stomach, swollen and redness in my throat, which is hard to swallow at times, and feel strip, which I'm waiting to see outside medical, massive weight loss of deprivation, shortness of food portion, and tampered with food, which I've went from 230 lb to 175 lb, and lack of mail incoming mail of legal, and personal mail, and also told I'm not leaving here or getting off lock up unless I show my private parts to staff, drop my lawsuits, or commit suicide, and these unprofessional acts have left me distress and distrain, seeking mental health, PREA counsel, and I've wrote several grievance, yet nothing been done[.]

See Grande Decl. Ex. K [D.E. 59-9] 57. When asked what remedy would resolve his grievance, Johnson stated the following:

> Transfer me so I know [sic] longer have to deal with these negligences [sic] and constitutional acts, so I can get proper fair equal just treatment per the policy, and constitutional law, get medical treatment I need, mental health treatment I need, and no longer have to deal with these sexual acts which I need to see the PREA officer/ counselor about, and no longer have to deal with these conflicts of interest, and I can be properly housed due to my custody level of ICON. Because I talk to the director, superintendent, and custody and I was told by custody administration on 12/5/2023 I would be transfer soon[.]

Id. On December 20, 2023, Johnson was transferred to Eastern Correctional Institution. See id. at 59. On January 16, 2024, Johnson received a step one response which stated, "Offender Greg Johnson #0737463 in response to grievance it is no longer warranted due to you have been transfer to the appropriate facility." Id. at 58. On January 25, 2024, Johnson received a step three response which stated, "This examiner has reviewed your grievance and the response by staff. It appears

9

that proper action has been taken by staff to resolve your grievance concerns. Therefore, this grievance is considered resolved by IGRB staff." Id. at 56.

As for grievance numbers 3980-2023-HCCL-22213 and 3980-2023-HCCL-22299, these two grievances were rejected for raising more than one issue per grievance. See Grande Decl. Exs. C and F [D.E. 59-9] 19–23, 32–35. Johnson did not resubmit separate grievances with one issue per grievance as he was encouraged to do, and Johnson does not contest defendants' evidence. See [D.E. 75] 1; [D.E. 76-1] 1–3; see also Sedar v. Reston Town Ctr. Prop., LLC, 988 F.3d 756, 761 (4th Cir. 2021) ("[T]he nonmoving party, to survive the motion for summary judgment, must demonstrate specific, material facts that give rise to a genuine issue."). Thus, Johnson failed to exhaust his administrative remedies. See Moore, 517 F.3d at 729 ("[W]e conclude that the rejection of the grievance as violating the rule prohibiting a single grievance from being used to complain of two separate incidents certainly was well founded."); Meadows v. Hamilton, No. 7:23-cv-740, 2025 WL 1805337, at *5 (W.D. Va. June 30, 2025) (unpublished) ("[Plaintiff] failed to follow all the steps of the administrative process and proper exhaustion of administrative remedies means using all steps that the agency holds out.") (internal citation and quotation omitted); Carter v. Smith, No. 3:22cv775, 2024 WL 477985, at *17 (E.D. Va. Feb. 7, 2024) (unpublished); Woodhouse v. Duncan, No. 7:17cv00129, 2018 WL 1514379, at *7 (W.D. Va. Jan. 10, 2018) (unpublished) ("The uncontradicted evidence is that [plaintiff] did not submit another grievance for any of his three grievances rejected at intake. Therefore, with regard to these grievances, I find that [plaintiff] did not exhaust his administrative remedies as required."), report and recommendation adopted, 2018 WL 1513009 (W.D. Va. Mar. 27, 2018) (unpublished), aff'd, 741 F. App'x 177 (4th Cir. 2018) (per curiam) (unpublished); Doane v. Clarke, No. 7:14CV00539, 2015 WL 8472799, at *4 (W.D. Va. Dec. 8, 2015) (unpublished) ("Because the evidence

10

establishes that [plaintiff] did not file a properly formulated, one-issue, regular grievance about any of the issues raised in his § 1983 complaint, the court will grant defendants' motion for summary judgment under § 1997e(a)."), aff'd, 668 F. App'x 26 (4th Cir. 2016) (per curiam) (unpublished).

As for grievance number 3980-2023-HCCL-23597, Johnson passively mentioned an alleged use of force incident that occurred on February 24, 2023, as one example of why he should be transferred out of Granville, and his only requested remedy was a transfer. See Grande Decl. Ex. K [D.E. 59-9] 57. The grievance examiners responded that Johnson's subsequent transfer resolved his grievance concerns. See id. at 56, 58. Although the grievance was exhausted, the mere mention of an alleged use of force incident as one example as to why Johnson should be transferred did not give prison officials fair notice of, and an opportunity to address, Johnson's claims against defendants. See Wilcox, 877 F.3d at 167 n.4 ("[G]rievances generally need only be sufficient to alert the prison to the nature of the wrong for which redress is sought."); Moore, 517 F.3d at 729 ("[Plaintiff's] pancreatic condition and Hepatitis C grievances, although alleging a pattern of inadequate medical care, did not give prison officials a fair opportunity to address the alleged inadequate medical care he received for his gout. At the conclusion of the review of those grievances, prison officials determined that medical care that had been provided since [plaintiff] filed his grievance, or that would soon be provided, adequately addressed [plaintiff's] concerns about the treatment he was receiving for these conditions."); Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) ("The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution[.]"); Johnson v. Johnson, 385 F.3d 503, 522 (5th Cir. 2004) ("[T]he grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit."); McClary v. Bradley, No. 5:17-CT-3089-

11

FL, 2019 WL 4439474, at *2 (E.D.N.C. Sept. 16, 2019) (unpublished) ("Sexual assault by groping and verbal sexual harassment are different issues, and the exhaustion of administrative remedies doctrine requires that plaintiff exhaust administrative remedies with respect to the issue alleged in the complaint."); Aten v. South Carolina Dept. of Corr., No. 3:17-cv-00874-PMD-KDW, 2018 WL 4560564, at *3 (D.S.C. June 13, 2018) (unpublished) ("[A]ll that is required under § 1997(e) is that the grievance be sufficiently clear as to inform the prison of the basis for the complaint and the complaint and the relief requested must be reasonably clear from the assertions in the grievance. Then, the complaint in the grievance must be reasonably related to the claims raised in the prisoner's civil rights complaint."), report and recommendation adopted, 2018 WL 4178445 (D.S.C. Aug. 31, 2018) (unpublished), appeal dismissed, 804 F. App'x 204 (4th Cir. 2020) (per curiam) (unpublished); Davidson v. Davis, No. 3:13-CV-590-FDW, 2015 WL 996629, at *3–4 (W.D.N.C. Mar. 6, 2015) (unpublished). Thus, the court grants defendants' motion for summary judgment and dismisses the action without prejudice for failure to exhaust administrative remedies.

As for defendants' motion to file all exhibits under seal, "[t]he First Amendment right of access attaches to materials filed in connection with a summary judgment motion." Doe v. Pub. Citizen, 749 F.3d 246, 267 (4th Cir. 2014); see Courthouse News Serv. v. Schaefer, 2 F.4th 318, 326 (4th Cir. 2021); United States v. Doe, 962 F.3d 139, 145 (4th Cir. 2020); Va. Dep't of State Police v. Wash. Post, 386 F.3d 567, 575 (4th Cir. 2004); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 178, 180–81 (4th Cir. 1988); Rushford v. New Yorker Mag., Inc., 846 F.2d 249, 252–53 (4th Cir. 1988); In re Knight Publ'g Co., 743 F.2d 231, 235 (4th Cir. 1984). "Where the First Amendment guarantees access, . . . access may be denied only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." Stone, 855

12

F.2d at 180 (citation omitted); see Press–Enter. Co. v. Superior Ct., 464 U.S. 501, 510 (1984); Rushford, 846 F.2d at 253.

Defendants have not demonstrated a compelling governmental interest in maintaining all records under seal. Parties routinely file the cited records unsealed in prisoner civil rights actions in this district. Moreover, to the extent that any of these records include the parties' confidential and protected information, defendants should file a redacted exhibit, not seek to seal all exhibits. See Fed. R. Civ. P. 5.2(a); Local Civ. R. 5.1(g); EDNC CM/ECF Policy Manual § IV.F. Thus, the court denies in part the motion to seal.

## CONCLUSION

In sum, the court GRANTS defendants' motion for summary judgment [D.E. 56], DENIES IN PART defendants' motion to file all exhibits under seal [D.E. 60], GRANTS defendants' motion to manually file a video exhibit [D.E. 61], and DISMISSES the action without prejudice for failure to exhaust administrative remedies. The court will maintain defendant's unredacted appendix [D.E. 59] under seal, but DIRECTS defendants' counsel to refile defendants' appendix unsealed and properly redacted on or before October 13, 2025. The court DIRECTS the clerk to close the case.

SO ORDERED, this  22  day of September, 2025.

_Terrence Boyle_
TERRENCE W. BOYLE
United States District Judge